RECEIVED

JUL 1 1 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| LISA TODD | CIVIL ACTION NO. 07-0754 |
| VS. | JUDGE DOHERTY |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION | MAGISTRATE JUDGE METHVIN |

## *REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED**.

### *Background*

Lisa Todd is 42 years old. Todd graduated from high school and worked in the past as a cashier, office manager, sales clerk, and jewelry salesperson.

On June 7, 2004, Todd applied for disability and supplemental security income benefits alleging disability since August 15, 2002 due to neck and back pain, residual pain from a burn incident, and depression.[1] Todd's application was denied on initial review and an administrative hearing was held on March 8, 2006.[2] In an opinion dated March 30, 2006, the ALJ denied benefits.[3] Relying on the testimony of a vocational expert, the ALJ found that Todd is not

---

[1] Tr. 45-47, 460-462.

[2] Tr. 486-512.

[3] Tr. 13-20.

disabled because there are jobs which exist in significant numbers that she can perform.[4] The Appeals Council denied review and Todd timely filed this appeal.

## *Assignment of Errors*

Todd alleges several errors regarding the lack of substantial evidence supporting the ALJ's decision.

## *Standard of Review and the Commissioner's Findings*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

---

[4] Tr. 12-18.

1.  If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2.  A person who does not have a "severe impairment" will not be found to be disabled.

3.  A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4.  If a person can still perform his past work, he is not disabled.

5.  If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, such as depression here, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The Regulations require:

> [T]he ALJ to identify specifically the claimant's mental impairments, rate the degree of functional limitation resulting from each in four broad functional areas, and determine the severity of each impairment. Furthermore, § 404.1520a(e) provides that the ALJ must document his application of this technique to the claimant's mental impairments.

Satterwhite v. Barnhart, 44 Fed.Appx. 652 (5th Cir. 2002) (unpublished).[5]

---

[5] For a succinct summary of the current law, see Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004):

1.  The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment.

2.  If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3).

In the instant case, the ALJ determined that Todd suffered from the following severe impairments: mild cervical and lumbar disc disease and burn residuals on abdomen and legs.[6] At Step 5, the ALJ found that Todd could perform a significant range of sedentary work.[7] Relying on the testimony of a vocational expert, the ALJ found that there were jobs existing in significant numbers which Todd could perform, and therefore she was not disabled.

## *Appeals Council's Decision*

After the ALJ's decision, Todd requested review by the Appeals Council. Todd submitted new evidence to the Appeals Council – medical records from Dr. James Ricciardi recommending fusion. The Appeals Council accepted and considered the new evidence stating, "We found that this information does not provide a basis for changing the Administrative Law Judge's decision."[8]

When the Appeals Council accepts and considers new evidence, the evidence becomes part of the administrative record that must be reviewed by the court:

> Because the statute does not define "final decision of the Commissioner of Social Security", we must look to the regulations. The regulations do not explicitly define the term. We extrapolate from the words of the regulation, however, that

---

3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings.

4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity.

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

[6] Tr. 15.

[7] Tr. 17, 19.

[8] Tr. 5.

> "final decision of the Commissioner of Social Security" includes the Appeals Council's denial of a request for review because the regulations provide that the Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review. We further conclude that the evidence submitted for the first time to the Appeals Council is part of the record on appeal because the statute itself provides that such record includes the "evidence upon which the findings and decision complained of are based." Id. Because the Appeals Council considered and evaluated such evidence, that evidence constitutes "evidence upon which the decision complained of is based."

Higginbotham v. Barnhart, 405 F.3d 332, 337 (5th Cir. 2005).

Thus, the evidence Todd submitted to the Appeals Council must be considered in determining whether substantial evidence supports the Commissioner's decision to deny benefits.

*Administrative Record*

*Burn residuals:* On October 21, 1998, Todd was frying food when she passed out. When she awoke, the pan of hot grease was lying on her abdomen. Todd was hospitalized at LSU Medical Center in Shreveport for a week and diagnosed with second and third degree burns to her inner thighs, lower abdomen, perineum, and right hand.[9] Todd was re-admitted from November 11-20, 1998 for skin grafts.[10] In March, 2000, Todd's scars were softening and she was told to continue using compression treatments.[11]

---

[9] Tr. 212-213.

[10] Tr. 294-296.

[11] Tr. 172.

*Neck and Back pain:* While working as a sitter, Todd injured her back while helping to lift an adult patient.[12] On February 9, 2001, Todd was examined at LSU Medical Center complaining of back pain.[13] Todd had full range of motion and was diagnosed with back strain.

From October, 2002 to February, 2006, Todd periodically underwent physical therapy for back and neck pain.[14] The physical therapy records indicate that Todd moved extremely slowly, had leg length discrepancy, and she had a local area of swelling in the lower cervical spine.[15]

X-rays taken on December 3, 2003 of the cervical spine were normal, but they showed degenerative disc disease at L5-S1.[16]

On October 16, 2004, at the request of Disability Determination Services, Todd was examined by Dr. Sujal Shah, an oncologist.[17] Todd had full range of motion in her extremities and neck, however Dr. Shah noted, "she does have spasming at the L5-L6 area, however this does not require any assistive device to ambulate."[18]

On November 1, 2004, a non-examining consultant with the Social Security Administration completed a Residual Functional Capacity Assessment.[19] The consultant found that Todd could occasionally lift 20 pounds, frequently lift 10 pounds, and sit, stand, and walk 6

---

[12] Tr. 494.

[13] Tr. 158-162.

[14] Tr. 107-111, 455-458.

[15] Tr. 457.

[16] Tr. 112.

[17] Tr. 134-135.

[18] Tr. 135.

[19] Tr. 91-98.

hours of an 8-hour workday. The consultant noted, "In pain most of all the day. Has pain when bending and lifting; can't stand for long. Evidence supports a severe medically determinable impairment. Symptoms are in keeping with the objective evidence. Statements are credible."[20]

On September 21, 2005, Todd's family physician, Dr. Michael Holland, referred her for evaluation to determine whether she was a candidate for lumbar fusion.[21] On December 8, 2005, an MRI of the cervical spine showed mild central bulging at multiple levels with arthritic changes.[22] The MRI of the lumbar spine showed:

1. Central disc herniation with left lateral component at L5-S1.

2. Mild disc dehydration and mild central bulging at L4-5 with no significant stenosis noted at this level.[23]

In June, 2006, Todd was examined by Dr. James Ricciardi, an orthopedist, for back and leg pain.[24] Another MRI was performed, which confirmed the disc herniation at L5-S1 and bulge at L4-5.[25] On August, 14, 2006, Dr. Ricciardi recommended that Todd undergo a discectomy and two level fusion.[26] On December 18, 2006, Dr. Ricciardi noted that, "Todd is disabled and unable to work. Her diagnosis is lumbar and cervical degenerative disc disease."[27]

---

[20] Tr. 96.

[21] Tr. 454, 488.

[22] Tr. 453.

[23] Id.

[24] Tr. 480.

[25] Tr. 482.

[26] Tr. 478.

[27] Tr. 472.

*Depression:* On May 18, 2004, Todd was admitted to Allen Parish Hospital for depression.[28] Todd reported that she was taking an anti-depressant. Todd was diagnosed with "Major depressive disorder, severe, without psychotic features."[29]

On October 7, 2004, at the request of DDS, Todd was examined by Dr. Sandra Durdin, a clinical psychologist.[30] Dr. Durdin noted that Todd was moderately depressed during the evaluation, and she is capable of understanding and carrying out simple repetitive instructions, she has fair ability to sustain a 40 hour work week. Todd has fair ability to withstand routine and ordinary stress, however, "this may worsen with continued sedentary activities and no psychiatric treatment or counseling."[31] Dr. Durdin diagnosed moderate depressive disorder and stated that Todd "should be in the mental health system."[32] Dr. Durdin concluded that Todd "should be able to return to work with adequate symptom control."[33]

On October 27, 2004, Dr. Joseph Kahler, psychologist, completed a Mental Residual Functional Capacity Assessment.[34] Dr. Kahler noted, "Because of [Todd's] personality structure, she is likely to be quite sensitive to harsh supervisory criticism, however she should be able to tolerate and benefit from helpful, respectfully offered advice and limits.... In any case, she

---

[28] Tr. 115-117.

[29] Tr. 116.

[30] Tr. 130-133.

[31] Tr. 132-133.

[32] Tr. 132.

[33] Id.

[34] Tr. 136-138.

appears to be capable of simple work in a relatively low stress environment with low social demands."[35]

*Administrative hearing:* At the hearing, Todd testified that her burn scars always bother her, especially with weather changes which cause her skin to tighten and pull.[36] Todd described her back pain as prohibiting her from working. She cannot sit or stand for more than 15-20 minutes before having to lie down.[37] Todd takes pain medication every four hours. She is unable to bend to pick up her 15 pound grandchild.[38] She does some cooking, but only when it does not require her to stand and monitor the progress. Todd goes to a physical therapist twice a week, where she rides an exercise bike for 10 minutes and stretches.

### *Findings and Conclusions*

#### Severity Finding

In assessing whether Todd had severe impairments, the ALJ concluded that Todd's depression was not severe:

> After a thorough examination of the evidence, the Administrative Law Judge finds the claimant has mild degree of restriction in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, and pace. There is no evidence of episodes of decompesation in work or work-like settings of an extended duration. The evidence supports a finding that the claimant's mental impairment has no more than minimal adverse affect on her ability to perform basic work activities and is, therefore, not found to be severe.[39]

---

[35] Tr. 138.

[36] Tr. 493.

[37] Tr. 502.

[38] Tr. 502.

[39] Tr. 15.

Under Fifth Circuit jurisprudence, "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), *citing* Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). [40]

The undersigned concludes that substantial evidence does not support the ALJ's determination that Todd's depression is not severe. As set forth above, the record shows that at least two physicians have diagnosed Todd with major depressive disorder, she takes anti-depressants, and two psychologists have concluded that her mental impairments prevent her from working in stressful situations or in jobs that involve more than simple repetitive instructions.[41] This clearly establishes that Todd's depression is more than a slight abnormality and it poses limitations on her ability to perform work-related tasks. Accordingly, the undersigned finds that the ALJ erred in failing to find that Todd's depression was severe.

## Disabling Pain

A review of the medical records, as detailed above, shows that Todd has serious medical problems. Todd has a herniated lumbar disc and bulging lumbar and cervical discs. Spasm in the lumbar region was noted, as well as cervical swelling. Todd is a candidate for lumbar spine discectomy and fusion. Further, Todd has a documented history of painful skin grafts from being burned.

---

[40] See also Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984). If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987).

[41] Tr. 116, 131, and 138.

Despite the medical evidence and Todd's complaints, the ALJ determined that Todd could perform sedentary work jobs that existed in substantial number in the economy. In so finding, the ALJ discounted Todd's complaints of disabling pain:

> [T]he claimant's subjective complaints are considered credible only to the extent that the evidence of record supports them. The claimant testified she is unable to work, in any capacity due to her orthopedic impairments. In addition, she indicated that she has recurrent pain from her burns which causes limitation and reduction in her daily activities. While she indicated she is unable to perform even sedentary work, she testified that she can ride a bicycle for at least ten minutes and is able to participate in physical therapy exercises. She takes care of her children, performs household chores, and cooks meals. She reported she takes medication for her symptoms but her physicians have not indicated that further invasive treatment is needed. She quit her last job as a jewelry clerk because she indicated she was in too much pain to continue. Her treating physicians confirmed she has degenerative disc disease and scoliosis and it is evident that these conditions would place significant limitation on her ability to lift, carry, stand, and walk. She has difficulty performing some tasks but her treating physicians do not indicate that she is prohibited from all forms of work activity Dr. Shah assessed that the claimant has full range of motion in her neck and shoulder without any signs of atrophy or defect. She is able to walk without difficulty and can squat, bend, and balance. While she has some limitation, there is no medical evidence that her symptoms would prohibit some form of sedentary work activity.[42]

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. Although the ALJ is entitled to make credibility determinations, when medical evidence supports complaints of pain and the opinions of physicians, the ALJ must have good cause for his credibility decisions. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994);[43] Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v.

---

[42] Tr. 16.

[43] "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Id. quoting, Bradley v. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1987). The ALJ is certainly able to decrease reliance on treating physician testimony for good cause. Leggett v. Chater, 67 F.3d 558, 566 (5th Cir.

Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complains of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

The ALJ's decision to discount Todd's credibility is not supported by substantial evidence of record. The medical records contain overwhelming evidence that Todd has chronic unrelenting back pain. The record clearly reflects objective medical reasons for Todd's allegations of pain that prevents her from sitting, standing, or walking for more than 20 minutes without rest – she has herniated and bulging discs. Further, Todd's treating physician has recommended that she undergo surgical intervention, and he has found that her medical condition prevents her from any work activity.[44]

Moreover, although the ALJ states that Todd cleans and cares for her children, in fact she testified that her children are older and "they more take care of me than I take care of them."[45] Further, the fact that Todd is able to attend physical therapy twice a week and ride the exercise bike for 10 minutes under supervision does not show that she can work. Todd testified that physical activity, such as walking for short periods of time, results in her having to lie down

---

1995). "Good cause for abandoning the treating physician rule includes 'disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.'" Id.

[44] Tr. 472.

[45] Tr. 503.

afterward. Thus, even though Todd can do limited activities such as walk short distances and ride an exercise bike, she still experiences pain.

The evidence of record shows that Todd's condition is of a chronic and severe nature, which prohibits her from engaging in work-related activities. The undersigned concludes, therefore, that the ALJ erred in discounting Todd's allegations that she cannot walk, sit, or stand for more than 20 minutes without rest. Considering this, and the vocational expert's testimony that there are no jobs for a person with such limitations, the undersigned finds that the ALJ's determination that Todd can perform work that exists in significant numbers in the economy is not supported by substantial evidence.

## *Conclusion*

The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and Todd be awarded benefits consistent with an onset date of August 15, 2002.[1]

Under the provisions of 28 U.S.C. Section 636(b)(1)© and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10)**

---

[1] A judgment entered adopting this Report and Recommendation constitutes a "final judgment" that triggers the filing period for an EAJA fee application. Shalala v. Schaeffer, 509 U.S. 292, 113 S.Ct. 2625, 2631 (1993); Freeman v. Shalala, 2 F.3d 552 (5th Cir. 1993).

days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on July 10, 2008, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)